UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALAN STEWART,

    Plaintiff,

v.                        CASE #

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

## COMPLAINT

The Plaintiff, ALAN STEWART (STEWART), sues Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY (HARTFORD), and states:

### Jurisdiction and Venue

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. §1132.

3. HARTFORD is an insurance company licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4. STEWART was at all relevant times employed by Stryker Corporation ("STRYKER") at a location within this District.

5. STRYKER is the Plan Sponsor of an employee benefit plan providing disability benefits to its employees (the Plan).

6. At all relevant times, STEWART is and/or was a participant in the Plan incident to his employment.

7. Venue is proper within this District.

**Standard of Review Applicable to this ERISA Action**

8. STRYKER funded its Plan by purchasing a group policy of insurance (Policy #GLT-675443) issued by HARTFORD. A copy of the Long Term Disability policy is attached hereto as Exhibit "A".

9. HARTFORD made benefits determinations under the group policy it issued, including the determination made on Plaintiff's claim.

10. The Plan's terms do not grant discretionary authority to HARTFORD. Alternatively, the Plan Administrator or Plan Sponsor did not properly delegate discretion to HARTFORD.

11. The Long Term Disability group policy was drafted in its entirety by HARTFORD.

12. The Long Term Disability group policy is a contract of adhesion.

13. STRYKER and HARTFORD use the group insurance policy issued by HARTFORD (Exhibit A) as both the Plan document and policy language.

14. No other plan documents exist other than the group insurance policy (Exhibit A).

15. No originating plan document exists that instituted the Plan.

16. No originating plan document or other document exists in which HARTFORD reserved any discretionary authority to itself in relation to the Plan.

17. The employees or agents of STRYKER and HARTFORD did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from STRYKER to HARTFORD.

18. At the inception of the Plan, STRYKER did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

19. At the time it purchased the Long Term Disability group insurance policy from HARTFORD, STRYKER did not have any discretionary authority which it could delegate to an insurance company.

20. There is no mention of any delegation of discretion to HARTFORD within the four corners of the Long Term Disability group insurance policy which funds the Plan.

21. HARTFORD was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because of one or more of the following:

   a) STRYKER never had the authority to delegate discretion to HARTFORD following the inception of its disability plan;

   b) Discretionary authority is a material concept that HARTFORD never discussed or negotiated with STRYKER;

   c) The Long Term Disability group insurance policy is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

d) If it had the power to delegate discretion, STRYKER did not properly delegate discretionary authority over claims decisions to HARTFORD.

22. De novo review applies to this action.

23. To the extent that this court determines that de novo review does not apply to this action, HARTFORD pays claims from its own general assets as the claims decision maker and funder of the group insurance policy, and HARTFORD operates under a conflict of interest.

24. HARTFORD is the Plan's claims administrator; handling claims under the insurance policy.

25. Any claims paid under the Long Term Group Insurance Policy, are paid by HARTFORD entirely from HARTFORD's assets.

26. No assets of STRYKER are used to pay claims under the Long Term Disability group insurance policy.

## Claim for Disability Benefits Under the Plan

27. STEWART stopped working on July 31, 2021, because of his worsening paroxysmal atrial fibrillation.

28. STEWART applied for and was paid Short Term Disability benefits under the STRYKER's disability plan.

29. At all relevant times, a Plan participant is and was eligible to receive Long Term Disability benefits when the participant meets the following definition stated in the group insurance policy funding the Plan:

> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:

> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.
>
> If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.
>
> Your Disability must result from:
>   1) accidental bodily injury;
>   2) sickness;
>   3) Mental Illness;
>   4) Substance Abuse; or
>   5) pregnancy.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

30. In 2020, STEWART earned $318,135.42 in salary from STRYKER.

31. STEWART applied for Long Term Disability benefits under the Plan on December 17, 2021.

32. HARTFORD denied STEWART's claim for Long Term Disability benefits on March 24, 2021.

33. The basis for HARTFORD's initial denial was that STEWART did not meet the Plan's definition of disability because it claimed the information submitted by STEWART did not show STEWART was unable to perform Essential Duties of Your Occupation on a full time basis as of January 29, 2022.

34. STEWART submitted a timely appeal of the denial of benefits to HARTFORD on April 11, 2022.

35. At all relevant times, STEWART met the terms of the Plan's definition of "disabled."

36. STEWART was a Foot and Ankle Sales representative for STRYKER.

37. STWEWART sold foot and ankle surgical hardware and equipment.

38. Per STRYKER's job description of a Foot and Ankle Sales Representative, this position requires STEWART to demonstrate products in the Emergency room/operating room setting the, as well as being "on call" to perform emergency/operating room consultations. This required STEWART to spend long hours in the operating room to unsure the STRYKER products were used appropriately.

39. On April 08, 2021, STEWART saw his electrophysiologist, Irwin, M.D., James with complaints of increasing recurrence of atrial fibrillation episodes lasting from 5 to 6 hours exacerbated by drinking cold liquids and stress from work.

40. On April 19, 2021, STEWART underwent an SVC and tricuspid thymus ablation.

41. On August 08, 2021, STEWART returned to Dr. Irwin with complaints, with continued atrial fibrillation episodes despite the initial relief from his ablation in April.

42. In his professional opinion, Dr. Irwin noted in his August 08, 2021, office visit report that STEWART is "very symptomatic and unable to function to work."

43. On November 9, 2021, STEWART had his fourth ablation.

44. On January 6, 2022, STEWART returned to Dr. Irwin with although lesser in frequency and duration, persistent episodes of atrial fibrillation since his fourth ablation.

45. On February 1, 2022, STEWART saw his cardiologist, Maher PA-C, Kristina, where she filles an Attending Physician Statement stating STEWART was only able to sit, stand, walk, intermittently for 2 hours in a workday.

46. On February 11, 2022, Dr. Irwin similarly sent Hartford his opinion that STEWART is only able to sit for 2 hours a day, stand for 1 hour a day, walk for 45 minutes a day, and lift 20 pounds occasionally.

47. On February 11, 2022, Maher-PA, also sent Hartford a form stating that STEWART is unable to perform work duties of his job at max capacity due to his continuous episodes of atrial fibrillation.

48. On April 20, 2022, Dr. Irwin wrote a letter to Hartford again stating STEWART cannot return to work as he is still being treated for his

persistent atrial fibrillation and associated issues like sleep apnea and hypertension.

49. STEWART's treating providers have not issued a release to return to work.

50. On July 26, 2022, HARTFORD upheld its original decision and denied STEWART's appeal, stating that there was a lack of medical information to support that STEWART was Totally Disabled according to the Policy during the time period reviewed.

51. HARTFORD has refused to pay the benefits sought by STEWART and as grounds for such refusal has alleged that Plaintiff does not meet the definition of disability in the Plan.

52. With respect to all claims made herein, STEWART has exhausted all administrative/pre-suit remedies.

53. STEWART is entitled to certain benefits under the Plan consisting of benefits for Long Term Disability from January 29, 2022, through the date of filing this action.

54. STEWART's gross plan benefit is $15,000.00 per month.

55. There are 8.2 months of past-due monthly benefit payments owed through the date of filing this action

56. HARTFORD has deprived STEWART of the aggregate sum of $100,294.39.

57. Plaintiff is entitled to benefits herein because:

    a. The benefits are permitted under the Plan.

  b. Plaintiff has satisfied all conditions to be eligible to receive the benefits.

  c. Plaintiff has not waived or relinquished entitlement to the benefit.

58. Each monthly benefit payment owed is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks prejudgment interest on each such payment.

59. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), STEWART is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

WHEREFORE, the Plaintiff, ALAN STEWART, asks this Court to enter judgment against the Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a foreign corporation, finding that:

(1) The Plaintiff is entitled to Long Term Disability benefits from January 29, 2022, through the filing of this lawsuit; and

(2) The Plaintiff must be awarded benefits in the amount not paid to the Plaintiff from January 29, 2022, to the date of filing this lawsuit total of $100,294.39 together with prejudgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid; and

(3) The Plaintiff must be awarded reasonable attorney fees and costs incurred in this action; and

(4) For such other and further relief as this Court deems just and proper, including but not limited to:

    a. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

    b. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

    c. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

Signed this 7th day of October, 2022.

  /s/ William C. Demas
WILLIAM C. DEMAS, ESQUIRE
Florida Bar # 0142920
TUCKER LAW GROUP, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:   (727) 572-5000
Fax:   (727) 571-1415
demas@tuckerdisability.com
*Lead Attorney and Lead Counsel for the Plaintiff*


/s/ John v. Tucker
JOHN V. TUCKER, ESQUIRE
Florida Bar # 0899917
TUCKER LAW GROUP, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:   (727) 572-5000
Fax:   (727) 571-1415
tucker@tuckerdisability.com